## Powell v. Instant Replay Video, Inc.

*Harry M. Paras,* for plaintiff.

*J. Eric Barchiesi,* for defendant Instant Replay Video Inc.

*Keithley D. Mulvihill,* for defendants Peluso, Conn, and Tropical Illusions Tanning Salon.

*Robert J. Marino,* for defendant Anytime Tanning Club LLC.

*Robert W. Deer,* for defendant Wolff's Den Inc.

FRIEDMAN, *J.,* March 18, 2011—

## MEMORANDUM IN SUPPORT OF ORDER

Plaintiff has brought the captioned action against various defendants based on plaintiff's having contracted skin cancer from using the tanning beds at businesses where she was employed as a receptionist.[1] Her duties did not require her to use the tanning beds at issue, rather she was given permission to do so as part of her compensation.[2] The captioned defendants have filed preliminary objections to the complaint, the main one being based on the doctrine of preemption. To the extent the complaint is based on a failure to warn, the defendants argue that claim has been preempted by FDA regulations specifying the exact warnings to be given to users of tanning beds, such as plaintiff. Defendants argue that the only acts of negligence not preempted are those set forth in ¶30(u) & (v) of the complaint, and that the claims based on ¶30(u) -- (t) and on Count II (misrepresentation) are preempted.

The parties seem to agree that the applicable law is found in the cases of *Medtronic, Inc. v. Lohr v. Medtronic,*

---

1. The action against the three Hollywood Tans defendants has been voluntarily discontinued. The complaint was also dismissed as to Rose Poznak, by stipulations.

2. We overruled the defendant Employers' Preliminary Objections based on the Workers' Compensation laws without prejudice to said Defendant's right to re-raise that in a motion for summary judgment. This issue will not be discussed further herein.

*Inc.*, 518 U.S. 470, 116 S.Ct. 2240 (1996) and *Green v. Dolsky*, 546 Pa. 400, 685 A.2d 110 (1996), although other cases are cited as well. *Medtronic* was decided by the United States Supreme Court in June 1996 and *Green* by the Pennsylvania Supreme Court shortly thereafter, in November 1996. Both cases involve §60K(a) of the Medical Device Amendments to the Food, Drug and Cosmetic Act. Under that section, states may not impose "any requirement (1) which is different from, or in addition to, any requirement under [the Food, Drug and Cosmetics] Act to [a covered] device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the] Act."

The Pennsylvania Supreme Court in *Green* discusses the relevant law very clearly. The classes of medical devices are summarized as follows:

The MDA classifies medical devices as Class I, II or III, depending upon their potential danger to the public. Class I devices pose little or no threat to health and safety and are subject to only general controls over manufacturing. Examples of Class I devices are elastic bandages, tongue depressors and bed pans. Class II devices require special controls, such as performance standards, postmarket surveillance, patient registries and guidelines for the use of the devices. Examples of Class II devices are oxygen masks, tampons, syringes, hearing aids, and condoms. Class III devices are "for use in supporting or sustaining human life or...of substantial importance in preventing impairment of human health" or "present a potential unreasonable risk of illness or injury." Class III devices include replacement joints,

pacemakers and heart valves. Thus, Class III devices are the most heavily regulated. 685 A.2d at p. 14.

The Pennsylvania Supreme Court also quotes the United States Supreme Court's discussion of preemption in *Medtronic* (which *Green* refers to as Lohr):

The United States Supreme Court has discussed preemption as follows:

Article VI of the constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any thing in the Constitution or Laws of any state to the Contrary notwithstanding." Thus, since our decision in *McCulloch v. Maryland*, 4 Wheat, 316, 427, 4 L.Ed 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by .... Federal Act unless that [is] the clear and manifest purpose of Congress." Accordingly," '[t]he purpose of Congress is the ultimate touchstone'" of preemption analysis. 685 A.2d at p. 115.

The Pennsylvania Supreme Court then turns to the issue in *Green*, which involved a Class III device:

With this background, we now turn to a discussion of whether the MDA [Medical Device Amendments] preempt state law causes of action for injuries allegedly received because of the use of a medical device. *We note initially that the question arises because, as mentioned earlier, there is no private right of action under the MDA, and in the absence of state law claims,*

*a party injured by a medical device would have no cause of action against any person or entity.* 685 A.2d at p. 115 (emphasis added).

In discussing *Medtronic*, the Pennsylvania Supreme Court in *Green* noted:

... The majority held that Lohr's design claim was not preempted, for the device had been approved for sale under the §510(k) provision, which meant that the FDA had not examined the merits or safety of this particular device, but had decided only that it was substantially equivalent to devices already on the market. [Citation omitted.]

Further, the court held that state claims alleging the manufacturer violated FDA regulations can be maintained, and that even if state causes of action require the proof of negligence or the creation of an unreasonable hazard, such additional elements make the claim narrower, not broader, and thus, are not to be regarded as additional or different "requirements." [Citation omitted.]

Additionally, the court concluded that the Lohr's manufacturing and labeling claims are not preempted by the act, for the regulations in Lohr concerned device regulation generally, and not a specific device or field of device regulation which might be contradicted by state requirements. The court pointed out that whether manufacturing and labeling claims are preempted will "require a careful comparison between the allegedly pre-empting federal requirement and the allegedly pre-empted state requirement. 685 A.2d at p. 116.

Our understanding of the *Green* case leads us to conclude that plaintiff's claims should not be dismissed at this early stage. Perhaps when the pleadings are closed, more likely when discovery has closed, the preemption issues can be re-visited.

We reach this conclusion because we believe we will need to make "a careful comparison between the allegedly preempting federal requirement and the allegedly preempted state requirement [or, possibly, an element of a common law cause of action, if Justice Breyer's concurring opinion is also to be considered]." See *Green*, 685 A.2d at pp. 116-117. The nature of the "allegedly preempted state requirement" is a matter for an answer and new matter, not a matter of plaintiff's pleading in her complaint.

We must also be able to review and analyze the FDA approval process for tanning beds. At this early stage, we are bewildered by the classification of tanning beds as Class I medical devices, similar in level of danger to health and safety to items such as tongue depressors and bed pans. By the time motions for summary judgment are ripe, the rationale may become clearer.

We also cannot decide at this early stage that plaintiff has no viable cause of action against the tanning salons when one might very well lie against a manufacturer[3] of tanning beds for the types of negligence claims found not preempted by the *Green* court. The actual or imputed knowledge of the salon operators at the times plaintiff used their tanning beds would also need to be considered.

---

3. We note that the manufacturer seems to have been dropped from the case. This does not alter our conclusion at this stage.

The preliminary objections of the defendants are overruled for the most part, without prejudice to their right to re-raise them in a motion for summary judgment or, if appropriate, in a motion for judgment on the pleadings. We do however sustain the preliminary objections in part and grant leave to plaintiff to file an amended complaint setting forth separate counts against each defendant, as required by Pa.R.C.P. 1020(a), including as well the timeframe in which plaintiff used the tanning facilities of each defendant and all other facts material to the causes of action pursued against each. It seems likely that the time when each defendant should have known of the danger to young users such as plaintiff would be a material fact.

See order filed herewith.

## ORDER OF COURT

And now, February 18, 2011, for the reasons set forth in the accompanying memorandum in support of order, the preliminary objections of the defendants are hereby sustained in part and overruled in part, without prejudice to defendants' right to re-raise those objections in a motion for summary judgment or, if appropriate, in a motion for judgment on the pleadings. plaintiff shall file an amended complaint within 30 days of the date hereof, setting forth separate counts against each defendant in accordance with Pa. R.C.P. 1020(a) and as described in the attached memorandum.

The undersigned retains jurisdiction only for the purposes of ruling on any preliminary objections that may be filed to the amended complaint.